105 F.3d 659
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gerald A. BOLAND, Plaintiff-Appellant,
v.
NATIONAL CITY BANK, CLEVELAND, a Member of National City
Corporation, Defendant-Appellee.
 No. 95-4219.
 United States Court of Appeals, Sixth Circuit.
 Dec. 31, 1996.
 
 Before: CONTIE, SUHRHEINRICH, and MOORE, Circuit Judges
 PER CURIAM.
 
 
 1
 Gerald A. Boland appeals the summary judgment dismissal of his ERISA, age discrimination and breach of contract action brought against his former employer, National City Bank. We affirm.
 
 I.
 
 2
 Defendant-appellee National City Bank ("NCB") hired plaintiff-appellant Gerald A. Boland ("Boland") as a bank teller in 1961. Following numerous promotions, NCB named Boland a regional manager in 1977, and a vice president in 1982. In 1986, Boland was named the vice president of NCB's residential real estate loan department. The residential real estate loan department processed NCB's residential mortgage loan applications and serviced NCB's residential mortgage loan portfolio.
 
 
 3
 In 1990, Boland was replaced by Richard Smith, a senior vice president at Buckeye Federal Savings and Loan before it was acquired by NCB. NCB told Boland that the change was needed because NCB was relocating its real estate loan servicing operations to Dayton, Ohio, and Smith had more experience generating mortgages through "outside loan originators." Boland was named the inside production manager. Though NCB reduced Boland's "salary grade level," his salary did not change.
 
 
 4
 In 1991, Lisa Marshall was named manager of outside sales. That same year, NCB eliminated Boland's position. Boland subsequently worked under Marshall as an inside mortgage loan officer. Once again, NCB reduced Boland's "salary grade level" but did not reduce his salary.
 
 
 5
 Later that year, NCB eliminated Boland's position and named him the loan originator in Lake County, Ohio, a position offering a reduced salary augmented by commissions. NCB offered to gradually reduce Boland's salary over a nine-month period to ease his transition to commission income. Fearing that he would not earn as much money as he previously earned, Boland quit on November 12, 1991. Shortly thereafter, NCB named Tony Brundage the Community Reinvestment Act loan originator for the city of Cleveland.[1]
 
 
 6
 On February 1, 1993, Boland filed this ERISA, age discrimination and breach of contract action against NCB. NCB moved for summary judgment on March 16, 1994. On October 19, 1995, the district court granted NCB's motion for summary judgment. Boland filed his timely notice of appeal on November 7, 1995.
 
 II.
 The ERISA Claim
 
 7
 Boland asserts that NCB violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., by terminating his employment to prevent him from receiving his full pension benefits. In response, NCB asserts that Boland voluntarily resigned. Alternatively, NCB asserts that it did not eliminate Boland's position with the intent to interfere with his pension rights.
 
 
 8
 Under ERISA, "[i]t shall be unlawful for any person to discharge ... or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ..., or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. Section 1140 was enacted to prevent "unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." West v. Butler, 621 F.2d 240, 245 (6th Cir.1980).
 
 
 9
 Even if we were to find that Boland was constructively discharged by NCB, the district court properly concluded that NCB's non-discriminatory reasons for terminating Boland were not pretextual. Simply stated, Boland failed to come forward with any evidence indicating that "interference with pension benefits was a motivating factor in the employer's actions." Humphreys v. Bellaire Corp., 966 F.2d 1037, 1043 (6th Cir.1992). He thus failed to meet his summary judgment burden. Accordingly, we reject Boland's first assignment of error.
 
 The Breach of Contract Claim
 
 10
 Boland alleges breach of contract and promissory estoppel claims based upon statements made by an NCB officer. Specifically, Boland asserts that NCB's Chief Executive Officer, David Daberko, told employees during a speech at an annual recognition dinner honoring employees with twenty-five or more years of service that NCB could not survive without them, and that they would always have jobs at NCB. In response, NCB asserts that David Daberko and NCB did not promise Boland continued employment.
 
 
 11
 In light of the unequivocal disclaimer in NCB's employee handbook ("employment is not guaranteed for any particular length of time") and the fact that David Daberko's alleged statements do not promise Boland continued employment in a particular position at the bank, we reject Boland's second assignment of error.
 
 The Age Discrimination Claim
 
 12
 Boland alleges that NCB violated Ohio Revised Code § 4101.17 by terminating him because of his age. In response, NCB asserts that Boland failed to satisfy two of the four requirements under that section in that he was not constructively discharged and was not replaced by a younger person.
 
 
 13
 The relevant Ohio statute provides: "No employer shall ... discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job...." Ohio Rev.Code § 4101.17(A).[2] To prove constructive discharge, Boland must demonstrate that NCB made his working conditions " 'so difficult or unpleasant that a reasonable person in [his] shoes would have felt compelled to resign.' " Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir.1982) (citation omitted).
 
 
 14
 Though Boland asserts that a reasonable person would not have accepted the Lake County loan originator position, he presented no admissible evidence to the district court to support his claim. In fact, Boland's bald assertion that he would have earned less in the new position is simply conjecture. Moreover, Boland does not allege intolerable working conditions or harassment, and the record does not support his claim that he was replaced by a younger person. Accordingly, we reject Boland's third assignment of error.
 
 
 15
 We therefore AFFIRM the summary judgment dismissal of Boland's action.
 
 
 
 [1]
 The Community Reinvestment Act provides loans to lower income and minority borrowers
 
 
 [2]
 On October 29, 1995, Ohio Rev.Code § 4101.17 was renumbered Ohio Rev.Code § 4112.14